## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

ROBERT J. AVERDICK, Individually and On
Behalf of All Others Similarly Situated,


                    Plaintiffs,


v.                                        **MEMORANDUM OF LAW & ORDER**
                                          Civil File No. 05-2095 (MJD/SRN)


HUTCHINSON TECHNOLOGY, INC.,
WAYNE M. FORTUN, JOHN A. INGLEMAN
and JEFFREY W. GREEN,

                    Defendants.
_____

Richard A. Lockridge, Gregg M. Fishbein, and Gregory J. Myers, Lockridge Grindal
Nauen P.L.L.P., and Steven G. Schulman, Peter E. Seidman, and Sharon M. Lee,
Milberg Weiss Bershad & Schulman LLP, for Plaintiff Averdick and Movants Ira
and John Biderman.

Garrett D. Blanchfield, Jr., Reinhardt, Wendorf & Blanchfield, and Darren J.
Robbins and Thomas E. Egler, Lerach Coughlin Stoia Geller Rudman & Robbins
LLP, for Plaintiff Heffner and Movant NECA-IBEW Pension Fund.

Vernon Jay Vander Weide, Head Seifert & Vander Weide, and Marc A. Topaz,
Richard A. Maniskas, and Tamara Skirsky, Schiffrin & Barroway, LLP, for Plaintiff
Poovakaw.

Wendy J. Wildung, Faegre & Benson LLP for Defendants.
_____

## I.   INTRODUCTION

This matter is before the Court on Plaintiffs Jonathan and Ira Biderman's Motion for Consolidation, Appointment as Lead Plaintiff, and for Approval of Lead and Liaison Counsel [Docket No. 10] and on Plaintiff NECA-IBEW Pension Fund's Motion to Consolidate Cases, Appointment as Lead Plaintiff, and for Approval of Lead and Liaison Counsel [Docket No. 5].  Oral arguments were held on December 1, 2005.

## II.   FACTUAL BACKGROUND

Currently before the Court are three purported securities fraud class action lawsuits on behalf of all persons who purchased or acquired Hutchinson Technology, Inc. securities between October 4, 2004 and August 29, 2005 ("Class Period").   All three actions (collectively "Actions") are brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.  Defendants are Hutchinson, Inc. and certain of Hutchinson's officers and directors individually.

Hutchinson manufactures and sells suspension assemblies for disk drives. The complaints allege that during the Class Period Defendants falsely presented Hutchinson as a company that was consistently beating analysts' projections by: overstating the demand for Hutchinson products; failing to disclose that the

increase in demand of new, lower-yielding products was reducing Hutchinson's prospective profitability; and failing to disclose an inadequate system of internal controls. Because of these misstatements, Plaintiffs allege Hutchinson stock became artificially inflated.

On July 21, 2005, Hutchinson disclosed that it had missed third quarter estimates by 50%. Hutchinson stock price dropped by 13% in a single trading session following this news. On August 30, 2005, Hutchinson announced that it was lowering projections for the fourth quarter 2005. The press release stated that earnings would be $0.05 per share, compared to previous guidance of $0.65, and that Hutchinson's gross margins might fall as low as 19% compared with original estimates as high as 30%. Plaintiffs allege the announcement triggered a drop in Hutchinson stock price of 17% in one day, from August 29, 2005 to August 30, 2005.

## III.   DISCUSSION

### A.   Motions to Consolidate

The Private Securities Litigation Reform Act ("PSLRA") requires the Court to address outstanding motions to consolidate before appointing lead plaintiff(s). 15 U.S.C. § 78u-4(a)(3)(B)(ii) (1998). Rule 42(a) of the Federal Rules of Civil Procedure instructs that a court may, in its discretion, order consolidation of

pending actions involving a common question of law or fact to avoid unnecessary costs or delay.  Fed. R. Civ. P. 42.

Plaintiffs Ira and Jonathan Biderman ("Bidermans") and the National Electrical Contractors Association and the International Brotherhood of Electrical Workers ("NECA-IBEW") moved to consolidate all pending shareholder actions against Hutchinson with the lead Civil File No. 05-2095.  Neither the Defendants nor the non-moving Plaintiffs opposed these motions.

Each of the actions asserts potential class claims on behalf of purchasers of Hutchinson securities for alleged violations of the Exchange Act.  Specifically, the Actions allege that Plaintiffs purchased Hutchinson securities at artificially inflated prices as a result of false and misleading statements in violation of Section 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.  The Class Period alleged by the Actions is identical.  The Actions name identical Defendants, with the exception of the Huefner Action, which names three additional Defendants. Because the Actions are essentially identical in their factual and legal bases and consolidation will effectively streamline discovery and general case management, the Court grants NECA-IBEW's motion to consolidate pursuant to Federal Rule of Civil Procedure 42(a).  From this point forward, the Actions shall be docketed under Civil File No. 05-2095.

## B.    Appointment of Lead Plaintiffs

The PSLRA, which governs the appointment of lead plaintiffs in private actions arising under the Exchange Act, instructs the Court to consider any motions for lead plaintiff "as soon as practicable" after ruling on pending consolidation motions.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  While the Eighth Circuit Court of Appeals has had little opportunity to pass on the lead counsel provisions of the PSLRA, a significant body of decisional law has evolved in other circuits.

### 1.    Notification Requirement

The process of appointment of lead plaintiff begins with a notification requirement.  The plaintiff who files the initial action must publish, in a widely circulated national business-oriented publication, a notice advising members of the purported plaintiff class of the pending action.  Id. at (a)(3)(A).  Members of the purported plaintiff class have sixty days from the date of publication to move the Court to serve as lead plaintiff.  Id. at (a)(3)(B).

In this case, the notification requirement has been met.  The initial action, Averdick, was filed on September 12, 2005.  Three lawsuits were filed in total.  A notice of pendency of action was published in Business Wire on September 9, 2005, within twenty days of the first complaint filing, as required by 15 U.S.C.     § 78u-4(a)(3)(A)(i).  Business Wire has consistently been recognized as a suitable vehicle for meeting the PSLRA's statutory notice requirement.  In re Universal

Access, Inc. Sec. Litig., 209 F.R.D. 379, 383 (E.D. Tex. 2002); In re USEC Sec.
Litig., 168 F. Supp. 2d 560, 562 (D. Md. 2001).  Accordingly, Averdick satisfied
the notification requirement by publishing its September 9, 2005 notice in
Business Wire.

### 2.   Most Adequate Plaintiff

After satisfaction of the notification requirement, the Court should select
the person or group most "most capable of adequately representing the interests
of the class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In making this
determination under the PSLRA, the most adequate plaintiff is the person or
group of persons that: (1) has filed the complaint or made a motion in response to
the published notice; (2) has the largest financial interest in the relief sought by
the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal
Rules of Civil Procedure.  Id. at §§(a)(3)(A) and (a)(3)(B)(iii).

### a.   Filing Requirement

Two proposed lead plaintiffs, the Bidermans and NECA-IBEW, filed motions
to appoint lead plaintiff.  These filings were made within sixty days of the
September 9, 2005 notice date, as required by the PSLRA, and were therefore
timely filed.  Id. at (a)(3)(A)(i).

### b.    Largest Financial Interest Requirement

The PSLRA does not articulate the procedure for determining the largest financial interest among the competing movants.  However, a four-factor inquiry has been recognized by various courts.  See In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 440 (S.D. Tex. 2002); In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); In re Nice Sec. Litig., 188 F.R.D. 206, 217 (D.N.J. 1998); Lax v. First Merch. Acceptance Corp., No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) (unpublished).  The four factors are: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.  Enron Corp. Sec. Litig., 206 F.R.D. at 440.  These factors are frequently referred to as the Lax factors.  Courts have employed this test to garner more information and to avoid a situation wherein the presumptive plaintiff has actually profited during the class eriod from the inflated stock prices.

Both parties concede that NECA-IBEW's loss of $62,432.10 makes it the presumptive plaintiff.  Application of the Lax factors also points to NECA-IBEW as the appropriate choice for lead plaintiff.  First, NECA-IBEW purchased a total of 5,118 shares of Hutchinson stock, while Bidermans purchased 4,000 shares. Correspondingly, NECA-IBEW's total net funds expended of $194,427.78 exceed

the Bidermans' $158,240.00 expended.  Finally, as stated above, NECA-IBEW has also suffered the largest loss.

Because the movant with the largest financial interest is presumptively the lead plaintiff under the PSLRA, the Court finds NECA-IBEW to be the presumptive lead plaintiff.

### c.    FRCP 23(a) Requirements

In addition to showing the greatest financial interest, the PSLRA also requires that the presumptive lead plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  According to Rule 23(a) of the Federal Rules of Civil Procedure, a plaintiff may sue as a class representative if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

Courts have consistently held that at this stage the Rule 23 considerations are limited to the questions of typicality and adequacy.  See In re Cendant Corp. Litig., 264 F.3d 201, 263 (3rd Cir. 2001); In re Oxford Health Plans, Inc. Sec.

Litigation, 182 F.R.D. 42, 50 (S.D.N.Y. 1998); Lax,1997 WL 461036 at *5.  Other

District of Minnesota cases have adopted this proposition.  Meeuwenberg v. Best

Buy Co., Inc., No. 03-6193, 2004 WL 950362 at *2 (D. Minn. April 29, 2004)

(unpublished); Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 407 (D. Minn.

1998) (under PSLRA rubric, a proposed lead plaintiff need only make a

preliminary showing that he or she satisfies the typicality and adequacy

requirements of Rule 23).

### i.    Rule 23(a) Typicality

Under Rule 23(a)(3), the claims or defenses of the representative parties

must be typical of those of the class.  The lead plaintiff need only make a

preliminary showing that it has claims that are typical to the putative class and

has the capacity to provide adequate representation for those class members.

Enron Corp. Sec. Litig., 206 F.R.D. at 441.  Typicality exists where the plaintiff's

claims arise from the same series of events and are based on the same legal

theories as the claims of all the class members.  Paxton v. Union Nat'l Bank, 688

F.2d 552, 561-562 (8th Cir. 1982).  Plaintiffs need not show substantial identity

between their claims and those of class members, but need only show that all

claims arise from the same course of conduct.  Priest v. Zayre Corp., 118 F.R.D.

552, 555 (D. Mass. 1988).

In this case, NECA-IBEW argues that it, like other purported class members, has: (1) purchased Hutchinson shares during the Class Period; (2) purchased shares in reliance upon the allegedly materially false and misleading statements made by Defendants; and (3) suffered damages thereby.  The Bidermans do not challenge the typicality of NECA-IBEW.  Thus, the Court finds that NECA-IBEW has made a sufficient showing of typicality to satisfy Federal Rule of Civil Procedure 23(a) for the purposes of appointing a lead plaintiff.

### ii.    Rule 23(a) Adequacy

Rule 23(a) requires the lead plaintiff to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  For purposes of appointing lead plaintiff, a movant is adequate if: (1) the movant is qualified, experienced, and generally able to conduct the proposed litigation; and (2) the movant does not have interests antagonistic to those of the class.

NECA-IBEW argues that it is adequate under Rule 23.  First, NECA-IBEW's interests are aligned with other members of the class because its claims are based on the purchase of Hutchinson stock at inflated prices in reliance on Defendants' alleged misstatements.  Additionally, there is no evidence that NECA-IBEW's interests are antagonistic to those of other Plaintiffs.  In fact, NECA-IBEW has taken steps to protect the interests of other members of the potential class by

retaining experienced counsel and filing suit.  Further, there is no evidence that

NECA-IBEW would be subject to any unique defenses.  Because NECA-IBEW has

made a prima facie showing that it meets the requirements of the PSLRA and Rule

23, NECA-IBEW remains the presumptive plaintiff.

### d.   Bidermans' Challenges to the Prima Facie Showing

The presumptive lead plaintiff "may be rebutted only upon proof" that the

presumptively most adequate plaintiff will not fairly and adequately protect the

interest of the class or is subject to unique defenses that render such plaintiff

incapable of adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).


The Bidermans raise three objections to the motion of NECA-IBEW for

appointment.  Rather than challenging the adequacy of NECA-IBEW to represent

the entire class, the Bidermans challenge its ability to represent purported sub-

classes.  First, the Bidermans assert that differences in the length of time the

stocks were held by various parties will affect damage calculations and thus will

make NECA-IBEW's interests antagonistic to those of other class members.  Next,

the Bidermans argue that because NECA-IBEW held common stock, it cannot

adequately represent claims of class members who held call options.  Finally, the

Bidermans argue that appointing institutional and individual investors will

diversify representation and benefit the class.  The Bidermans, therefore seek to

serve with NECA-IBEW as co-lead counsel.

### i.   Whether NECA-IBEW Can Adequately Represent In/Out Purchasers

An in/out plaintiff is one who both purchases and sells stock during the

same period of alleged price inflation.  Conversely, a retention plaintiff holds his

or her securities throughout the class period.  The Bidermans argue that NECA-

IBEW, a retention plaintiff, cannot adequately represent in/out plaintiffs, like the

Bidermans, because NECA-IBEW may take positions regarding damages that are

inconsistent with the interests of in/out class members.

The interests of in/out plaintiffs and retention plaintiffs may sometime

collide.  In <u>In re Seagate Tech. II Sec. Litig.</u>, the court described the conflict by

stating:

> …in establishing the price and value lines, the in/out
> plaintiff's interest lies in minimizing the degree of price
> inflation existing at the date of sale.  A retention plaintiff
> buying on that date has an exactly opposite interest; <u>i.e.</u>,
> such a person would seek to maximize the degree of price
> inflation existing on that date.  In other words, different
> plaintiffs have conflicting incentives in shaping the
> evidence.

843 F. Supp. 1341, 1359 (N.D. Cal. 1994).  The Eighth Circuit has had little

opportunity to consider the weight that a court should give a <u>potential</u> conflict at

this stage in the litigation.  While many defendants have raised the issue, and many courts have acknowledged the potential conflict, the majority of courts have held that the in/out conflict is not sufficient to negate adequacy even under the heightened scrutiny of class certification.  See Id. at 1359.  Some courts, addressing this issue during class certification, have found it necessary to hold an evidentiary hearing.  Id. at 1358-59 (requiring an evidentiary hearing to determine the impact that the presence of both in/out and retention traders has on the reliance, materiality and proximate cause elements of the fraud-on-the-market theory); O'Neil v. Appel, 165 F.R.D. 479, 494 (W.D. Mich. 1995).

Unlike the more intense scrutiny required during class certification and the verification of a proposed settlement, a "searching inquiry" into typicality and adequacy for PSLRA lead plaintiff purposes is not appropriate.  Skwortz v. Crayfish, 2001 WL 1160745 at *5 (S.D.N.Y. Sep. 28, 2004) (unpublished).  Some courts have held that it is preferable to appoint one lead plaintiff for a consolidated class.  See In re Tyco Int'l Ltd. Sec.Litig., 2000 WL 1513772  at *8 (D.N.H. 2000) (holding "while the potential for conflict…is real, the lead plaintiff determination is not the appropriate stage in the litigation to address this concern.")  Moreover, once appointed, the lead plaintiff becomes a fiduciary obligated to advance the interests of all putative class members.  See In re Quintas Sec. Litig., 201 F.R.D. 475, 482 (N.D. Cal. 2001); In re Lucent Tech., Inc. Sec.

Litig., 194 F.R.D. 137, 155 (D.N.J. 2000).  One recent District of Minnesota case considering whether to appoint co-lead plaintiffs to represent stock holders and bond holders concluded that class certification is a more appropriate point in the litigation to address any remaining concerns regarding the typicality and adequacy of lead plaintiffs.  Gottlieb v. Xcel Energy, Case No. 02-2931 Pretrial Order No. 1 (November, 13, 2002).

Defendants argue that NECA-IBEW will not adequately represent in/out plaintiffs because as a retention plaintiff, NECA-IBEW has a great incentive to shape the evidence in favor of retention plaintiffs.

Although the Eighth Circuit has not yet opined on this issue and other courts have ruled both ways, the Court does not find Bidermans' arguments persuasive.  At this point, the Bidermans have not alleged sufficient information to undermine NECA-IBEW's status as the sole presumptive plaintiff.  While the Bidermans concern is real, at this stage in the litigation it is only a potential conflict.  Additionally, to argue as the Bidermans do, that NECA-IBEW cannot represent the entire class, seems to defeat to some extent the purposes of consolidation which they staunchly advocated for.  Considering the fact that the Bidermans themselves  moved for consolidation, this argument seems inapposite.  Furthermore, NECA-IBEW, if appointed lead plaintiff, would be bound by its legal obligations as a fiduciary to advance the interests of the entire class.  Additionally,

14

the cases cited by the Bidermans can be distingusihed because each were before

their respective courts upon a motion for class certification which requires a more

a searching analysis.  Finally, because the Court will conduct a more rigorous

investigation into the adequacy of NECA-IBEW upon the eventual motion for class

certification, the Bidermans will have sufficient opportunities to raise continuing

concerns at that time.

### ii.   Whether NECA-IBEW Lacks Standing to Represent Purchasers of Options

The Bidermans next argue because NECA-IBEW purchased only

Hutchinson common stock, it lacks standing to represent purchasers of

Hutchinson call options.

Courts have held that purchasers of one type of security may not represent

the purchasers of other types of securities.  See In re Salomon Analyst Level 3

Litig., 350 F. Supp. 2d at 496; In re One Bancorp Sec. Litig., 136 F.R.D. at 531.

However, these cases all turned on whether a named plaintiff held each type of

security because at least one named plaintiff must have standing to pursue each

claim alleged.  "The fact that plaintiffs might have different types of securities

does not require a separate class or co-lead plaintiffs because lead plaintiffs need

not satisfy all elements of standing with respect to the entire lawsuit under the

PSLRA." <u>Salomon</u>, 350 F. Supp. 2d at 498; <u>In re Cendant Corp. Litig.</u>, 182 F.R.D. 144, 148 (D.N.J. 1998) (emphasis added).

One notable case appointed co-lead counsel based on concerns that a standing issue may arise regarding option holders. In that case, <u>Chill v. Green Tree Financial Corporation</u>, the option holders, worried that an Eighth Circuit Court of Appeals case barred standing for options purchasers, opposed both consolidation and appointment of one lead plaintiff. 181 F.R.D. 398, 405 (D. Minn. 1998). The court shared options holders' concerns and denied complete consolidation; instead creating one stock-holder action and one option-holder action. <u>Id.</u> at 407. It was understandable that the court appointed co-lead plaintiffs in that case, since there were essentially two putative classes.[1] Similarly, another court appointed co-lead plaintiffs in order to adequately represent stockholders and bondholders. In that case, <u>Miller v. Ventro Corporation</u>, both parties agreed that the potential differences between stockholders and bondholders warranted the appointment of co-lead plaintiffs. <u>Miller v. Ventro Corp.</u>, 2001 WL 34497752 at *11 (N.D. Cal. 2001).

---

[1] At the class certification point in the case, Judge Tunheim conclusively addressed any option-holder standing issues and determined that the Eighth Circuit does not bar option holders from bringing a § 10(b) claim. <u>In re Green Tree Fin.    Options Litig.</u>, 2002 WL 1752209 at * 5 (D. Minn. Jul. 29, 2002) (unpublished).

In this case, the Bidermans assert that NECA-IBEW may not have standing to assert claims on behalf of purchasers of Hutchinson options because it did not purchase any such securities. Each of Biderman's cited cases is distinguishable. In <u>Solomon</u> the bond claims were dismissed because no named plaintiff held bonds. <u>Salomon</u>, 350 F. Supp. 2d at 498. Because the Bidermans, are named in/out plaintiffs, standing is not at issue. Furthermore, the <u>Solomon</u> court specifically pointed out that the PSLRA does not require a lead plaintiff to have standing to assert all possible claims. <u>Id.</u> While the <u>Miller</u> court did appoint co-lead plaintiffs, it was attempting to resolve conflicts between potential subclasses rather than issues regarding standing. <u>Miller</u>, at *9. Finally, in <u>Chill</u> the fact that the court refused to consolidate made two lead plaintiffs necessary. Here, as discussed above, the Court has deemed consolidation appropriate. Thus, the Bidermans do not appear to have alleged sufficient questions regarding NECA-IBEW's adequacy to thwart its status as presumptive lead plaintiff.

### iii. Whether NECA-IBEW and the Bidermans as Co-lead Plaintiffs Can Adequately Represent the Class

The Bidermans recommend appointing both NECA-IBEW and the Bidermans as co-lead plaintiffs because including both institutional and individual investors would benefit the class. Various courts have appointed lead plaintiff

groups comprised of institutional and individual plaintiffs.  <u>See</u> <u>In re Oxford</u>
<u>Health Plans, Inc. Sec. Litig.</u>, 182 F.R.D. 42 (S.D.N.Y. 1998), <u>In re VistaCare Inc.</u>
<u>Sec. Litig.</u>, No. 04-1661 (D. Ariz. Feb. 15, 2005).  Many other courts have rejected
the appointment of co-lead plaintiffs, because increasing the number of lead
plaintiffs appears to detract from the goals of the PSLRA by reducing the
responsibility and control of any one plaintiff and causing unnecessary growth of
attorneys fees. <u>Gluck v. Cellstar Corp.</u>, 976 F. Supp. 542, 549 (N.D. Tex. 1997).

Although it is undoubtedly true that appointing the Bidermans as co-lead
plaintiff would increase the diversity of representation, it is important to separate
Bidermans' actual challenges to NECA-IBEW from their averments regarding their
own suitability for the role of lead plaintiff.  Even if working in tandem as lead
plaintiffs would somehow lead to better class representation, the Court must
appoint NECA-IBEW, the largest stakeholder, as lead unless it is disqualified under
the requirements set out in 78u-4(a)(3)(B)(iii) of the Act.  Accordingly, the Court
finds that NECA-IBEW is the presumptive lead plaintiff in this action.

### 3.    Bar on Professional Plaintiffs

Finally, the PSLRA restricts a person, or an officer, director, or fiduciary of
a lead plaintiff, from acting as the lead plaintiff in more than five securities class
actions during any three-year period.  <u>Id.</u> at (a)(3)(B)(vi).  The statute does not

explicitly state whether person, in this context, includes an institutional investor. However, many courts have found institutional investors exempt from the statutory professional plaintiff restriction based on Congress' intent to encourage institutional investors to act as lead plaintiffs.  Meeuwenberg, 2004 WL 950362 at * 3 (citing Smith v. Suprema Specialties, 206 F. Supp. 2d 627, 640-41 (D.N.J. 2002) (holding that the legislative history clearly evidenced Congress' intent to exempt institutional investors from the bar on professional plaintiffs).  Although the language of the PSLRA contains no explicit exception for institutional plaintiffs, it does give the court express authorization to disregard the prohibition. 15 U.S.C. (a)(3)(B)(vi).

The presumptive plaintiff, NECA-IBEW, has been named lead plaintiff in at least five actions in the last three years.  However, this fact alone does not bar the Court from appointing NECA-IBEW as lead plaintiff.  Because NECA-IBEW is an institutional plaintiff, and not clearly subject to the professional plaintiff restriction, the Court has authority to disregard this provision of the PSLRA. Further, because NECA-IBEW emerged from the PSLRA rubric as the presumptive plaintiff, the fact that there is a potential conflict with the professional plaintiff bar is not a sufficient reason to deny lead plaintiff status.  This Court does not believe that NECA-IBEW's status as lead plaintiff in other actions will interfere or hinder its ability to fairly and adequately represent plaintiffs in the present action.

19

Finally, neither competing Movants nor other class members have raised any

objection based upon this provision of the PSLRA.  Because NECA-IBEW does not

currently fall under the professional plaintiff bar of the PSLRA, it remains the most

appropriate choice for lead plaintiff.

### C.    Appointment of Lead and Liaison Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the party selected as lead

plaintiff shall, subject to Court approval, select and retain counsel to represent the

class he seeks to represent.  In that regard, NECA-IBEW has selected the law firm

of Lerach Coughlin as lead counsel and the law firm of Reinhardt Wendorf as

liaison counsel.  Both selections for lead and liaison counsel have attached their

resumes, and as demonstrated therein, both firms have prosecuted numerous

securities fraud class actions on behalf of injured investors.

Because these law firms have the adequate experience and resources to

effectively represent Plaintiffs and no challenges have been made to their

appointment, the presumptive Plaintiff's selection of counsel should be approved.

Accordingly, the Court appoints NECA-IBEW's chosen counsel, Lerach Coughlin as

lead counsel and Reinhardt Wendorf as liaison counsel.

### IV.    CONCLUSION

Having found based upon the files, records, and proceedings herein that (1)

the related securities fraud actions share significant questions of fact and law and should therefore be consolidated, (2) NECA-IBEW meets the requirements of the PSLRA and therefore should be appointed as lead plaintiff, (3) the Bidermans' motion for appointment as co-lead counsel to represent bondholders has not sufficiently rebutted the presumption that NECA-IBEW is the sole lead plaintiff and should be denied, and (4) NECA-IBEW's selection of Lerach Coughlin and Reinhardt Wendorf should be approved, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Ira and Jonathan Biderman's Motion to Consolidate and Appointment as Lead Plaintiff [Doc. No. 10.] is **DENIED.**

2. Plaintiff NECA-IBEW's Motion to Consolidate and Appointment as Lead Plaintiff and for Approval of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, and Reinhardt Wendorf & Blanchfield as Lead and Liaison Counsel [Doc. No. 5.] is **GRANTED.**

3. That hereinafter the caption for the consolidated securities fraud action shall be as follows:

    United States District Court
    District of Minnesota

    In re Hutchinson Technologies Securities Litigation
    Master File No. 05-2095 (MJD/SRN)

4. That a copy of this Order shall be docketed in all other constituent

files, but the files in this consolidated action shall be maintained under Master File No. 05-2095 (MJD/SRN), and all orders, pleadings, motions, and other documents when docketed in the Master File shall be deemed to be filed and docketed in the constituent file.

5.     That this Order shall apply to the consolidated securities fraud action and to each case that relates to the same subject matter that is subsequently filed in this court or is transferred to this court and is consolidated with the securities fraud action.

Dated: February 9, 2006                          s / Michael J. Davis
                                                 Judge Michael J. Davis
                                                 United States District Court

22